Hon. Leonard G. Dunston Director New York State Division for Youth
This responds to a request from your counsel for an opinion as to the applicability of sections 149 and 149-a of the Correction Law to juvenile offenders in the custody of the Division for Youth.
The Division for Youth was established as part of the Executive Department in 1960 (Executive Law, §§ 500, et seq.; L 1960, ch 881). Among its responsibilities are operation and maintenance of youth centers, State training schools and alternate programs to advance the moral, physical, mental and social well-being of New York's youth (id.,
§ 501). The division also maintains secure facilities for the care and confinement of juvenile offenders incarcerated pursuant to the provisions of the Penal Law (id., § 515-b). Section 515-b provides that when a juvenile offender is in the custody of the division, he or she is subject to the division's rules and regulations. With regard to the offender's parole, temporary release and discharge, however, "the laws applicable to inmates of State correctional facilities" govern (id., § 515-b[7]).
Most of the provisions governing parole are found in Article 8 of the Correction Law (§§ 210, et seq.). In addition, sections 149
and 149-a of the Correction Law require notice of an inmate's release (by parole or other means) be given to certain persons. Section149 of the Correction Law requires that 48 hours prior to the release of a repeat felony offender, the Department of Correctional Services must give notice of the release to the sheriff and chief of police of both the municipality where the inmate plans to reside and the municipality where he resided at the time of his conviction (id., § 149).
Section 149-a was recently added (L 1985, ch 504) to the Correction Law and requires that notice of an inmate's release be given to the victims of certain violent crimes and their family members.* Both this section and section 149 impose duties on the Department of Correctional Services to comply with their notice requirements. Counsel's letter notes that these sections do not make any reference to juvenile offenders or the Division for Youth and the question is whether the division must comply with these notice requirements.
The Executive Law provides that a juvenile offender's "parole, temporary release and discharge shall be governed by the laws applicable to inmates of State correctional facilities" (Executive Law, § 515-b[7]). In our view, this reference is sufficiently broad to include the notice requirements for paroled offenders set forth in Correction Law, §§149, 149-a. The purpose of these notification provisions is stated in the legislative history in the following way:
 "This bill will extend a minimum standard of protection to crime victims who fear retribution from released inmates whom they helped to convict of felony offenses. The likelihood that an inmate or former inmate will seek revenge against the victim who has come forward against him appears sufficiently great to warrant the extension of current notification procedures for released inmates to the vulnerable crime victim" (Assembly Memorandum in Support of Legislation, Legislative Bill Jacket, L 1985, ch 504).
This statement of legislative purpose applies equally to adult and juvenile offenders. Making the release of juvenile offenders subject to these notification requirements is also in accord with section 515-b, which seeks to treat juvenile offenders in the same way as adult offenders.
Having determined that under certain circumstances, victims and law enforcement officials are entitled to notification of the offender's release, the question remains as to who in State government is charged with the duty of notifying the victim and/or law enforcement official. Other than the general reference to the Correction Law provisions governing parole, temporary release and discharge, the Executive Law does not mention the notification requirements at all, much less designate who is required to notify the victims. The provisions in the Correction Law referred to in section 515-b are couched in terms of adult offenders. Juvenile offenders and the Division for Youth are not mentioned. Reference is made to Department of Correctional Services officials, the Commissioner of that Department and inmates at correctional facilities.
With regard to "temporary release programs" for juvenile offenders, this ambiguity was resolved by legislative amendment specifically substituting Division for Youth officials and analagous terminology for the provisions in the Correction Law:
 "For the purposes of temporary release programs for juvenile offenders only, when referred to or defined in article twenty-six of the correction law, `institution' shall mean any facility designated by the director of the division for youth, `department' shall mean the division for youth, `inmate' shall mean a juvenile offender residing in a division for youth facility, and `commissioner' shall mean the director of the division for youth" (Executive Law, § 515-b[7]).
The legislative history of this section indicates that this substitution of terminology was not considered necessary, but only desirable for clarification purposes:
 "The Director of the Division for Youth, rather than the Commissioner of Correctional Services, should be responsible for the temporary release of juvenile offenders from Division facilities since the Commissioner of Correctional Services does not have any responsibility for juvenile offenders except following a transfer to the Department of Correctional Services as provided for in subdivisions 4, 5 and 6 of Section 515-b of the Executive Law.
 The purpose of this legislation is to clarify that the Director of the Division for Youth is solely responsible for the establishment and operation of temporary release programs for juvenile offenders. It does not substantively impact upon the established mandates and parameters of temporary release as provided in Article 26 of the Correction Law" (Assembly Memorandum in Support, Legislative Bill Jacket, L 1983, ch 308 [emphasis supplied]).
The clear implication here is that prior to the clarifying 1983 amendment the Division for Youth supervised the temporary release of juvenile offenders. The legislative materials do not indicate why clarification was deemed necessary for the temporary release of juvenile offenders, but not their parole and discharge. Nevertheless, the legislative history indicates, correctly we believe, that even prior to the 1983 amendment, the Executive Law authorized the director and the division to implement the temporary release provisions of the Correction Law. We believe that it is implicit in the reference by the Executive Law to the provisions of the Correction Law dealing with parole, temporary release and discharge, that Division for Youth officials are to be substituted for Department of Correctional Services officials in applying these provisions. To find otherwise would create serious administrative problems, in that Department of Correctional Services officials would be responsible for parole and discharge of incarcerated juvenile offenders in the custody of the Division for Youth.
We conclude that sections 149 and 149-a of the Correction Law apply to juvenile offenders in the custody of the Division for Youth, and the division has the duty to comply with the notification requirements of these sections.
* Section 149-a defines victim as follows:
 "(a) `Victim' means a person who, as a result of a violent felony offense as defined in sections 70.02
and 125.27 of the penal law, has suffered a direct adverse effect consisting of death, physical injury, rape, sodomy or aggravated sexual abuse" (Correction Law, § 149-a[1][a]).
Subdivision 2 of section 149-a provides:
 "Upon filing of a victim notice by a victim [with the clerk of the sentencing court] or a family member, it shall be the duty of the department at the time of the discharge or parole of an inmate named in such form, to notify the victim or family member by certified mail of such release".